STATE *vs.* ANDREW J. JONES.

General words in a statute do not authorize an act to be done, which is expressly prohibited by a former statute; plain and positive words must be used.

The act of the General Assembly, ratified February 16th, 1871, requiring "the President and Directors of the several Railroad Companies of this State, upon demand, to account with and transfer to their successors, all the money, books, papers and choses in action belonging to such company," is sufficiently general in its language, taken by itself, to embrace bonds of the State; but the said act must be taken and construed in connection with two other acts, viz: act February 5th, 1870, and act March 8th, 1870. Thus taken and construed, the acts of February 5th, 1870, and March 8th, 1870, dispose of the bonds known as special tax bonds, and the act of 1871 has reference only to "money, choses in action, property and effects belonging to the company;"

STATE *v.* JONES.

Therefore, an indictment under the said act of February, 1871, cannot be sustained against a former President of the Western Railroad Company, for refusing to transfer to his successor in office certain special tax bonds, which were issued under an act ratified February 3d, 1869, and which came into the hands of the said former President, for the use and benefit of the company.

[*State* v. *Krebs*, 64 N. C. 604 and *McAden* v. *Jenkins*, 64 N. C. 800, cited and approved.]

CRIMINAL ACTION, tried before *Buxton, J.*, at Spring Term, 1872, of the Superior Court of MOORE.

The indictment charged, in substance, that the defendant, A. J. Jones, " was heretofore President of the Western Railroad Company, and that on or about the 18th of January, 1872, one L. C. Jones was elected President, to succeed the said A. J. Jones as President, and that on the 23d day of February, 1872, demand was made by the President and Directors of said Company upon the said A. J. Jones, that he should account with the President and Directors of said Company, who had been elected to succeed him, the said A. J. Jones, President, and the late Directors of said Company, and transfer to them forthwith all the moneys, books, papers, choses in action, property and effects belonging to the said Company, and that the said

NOTE.—Chap. 72, Acts 1870–'71 ; Feb. 16th, 1871.

SEC. 1. *The General Assembly of North Carolina do enact,* That the President and Directors of the several railroads of this State, and all persons acting under them, are hereby required, upon demand, to account with the President and Directors elected or appointed to succeed them, and shall transfer to them forthwith all the money, books, papers, choses in action, property and effects of every kind and description belonging to such company, and that a refusal or failure to account for and transfer all the money, books, papers, choses in action, property and effects, as herein required, shall be deemed a misdemeanor, and, upon conviction in any Superior Court of this State, shall be punished by imprisonment in the penitentiary of this State for not less than one nor more than five years, and by fine, at the discretion of the Court.

A. J. Jones, &c., did refuse to account for and transfer to the said President, &c., all the money, books, papers, choses in action, property and effects belonging to said Company, for which he ought to have accounted and transferred to them, to wit: certain coupon bonds of the State of North Carolina, which said bonds were delivered to the said A. J. Jones, President of the Western Railroad Company, on or about the 22d day of June, A. D. 1869, by the Public Treasurer of the said State, in payment of the subscription made by the State of North Carolina to the capital stock of the said Western Railroad Company, amounting to about the sum of one million two hundred and sixty-four thousand nine hundred and eighty-three dollars and forty-two cents, which were received by the said A. J. Jones for the use and benefit of said Company, and also certain money which had been at times received by the said Jones while President, for the use and benefit of the Company; to the evil example, &c., and contrary to the statute in such case made and provided, and against the peace and dignity of the State."

Defendant pleaded not guilty-

In the case made out and sent to this Court by the Judge below, all the testimony is incorporated. A greater part of this testimony, which is very voluminous, is not important to be stated, under the view taken of the matter in the opinion of the Court.

It was proved that the defendant, as President of the Western Railroad Company, received from the State Treasury 132 special tax bonds, with coupons attached, and running for thirty years. He also received thirty thousand dollars in cash, in payment of interest on these bonds. A demand was made by the President and Directors for the bonds (special tax) issued for the benefit of the Company, and "all other assets and effects of the Company." Defendant presented an account of $55,000 ; said he did not recognize the authority of the Directors, but proposed to leave the account if they would allow

it. The Board refused to allow it. It was then withdrawn. He stated that the bonds had been placed in the hands of brokers to be sold, and that only a portion had been sold. None of the bonds were returned to the Railroad Company or to the State Treasury.

The counsel for the defendant, among other prayers for special instructions, asked the Court to charge the jury :

That the act of February 3d, 1869, was no longer operative, having been repealed by an act ratified 8th March, 1870.

(1.) That the repealing act of 8th March, 1870, is valid, because the power of repeal was reserved to the Legislature by Art. 8, Sec. 1, of the Constitution.

(2.) If the repealing act of March 8th is not valid in consequence of the Legislature having no right to repeal, still the special tax bonds are not subjects to be accounted for by the defendant; because they are not named as such in the act of the 16th February, 1871, under which the indictment is drawn, and because the act of 16th February, 1871, could not have these special tax bonds in view, as it was passed subsequently to the act of 5th February, 1870, being the act to restore the credit of the State, which required the return of these bonds to the State treasury.

(3.) If the repealing act of 1870 is valid, it affected all the special tax bonds authorized by the act of February 3d, 1869, to be delivered to the Western Railroad Company, not only the $1,000,000 to pay the additional subscription, but also the $500,000 in bonds to be exchanged for second mortgage bonds, &c., &c.

The Court charged, in response to this request, that whether the act of March 8th, 1870, was valid or not, it did not relieve the defendant from liability, under the act of 16th February, 1871, for what he may have received for the use of the Railroad Company. Compliance with the act, requiring a return of the bonds to the State treasury, would have relieved the de-

fendant from liability, but such compliance is nowhere alleged or proved.

The Court was further of opinion, that, although the act of of February 16th, 1871, did not mention coupon bonds *nominatim*, yet terms are used broad enough to embrace them, viz: all money, books, papers, choses in action, property, and effects of every kind and decription belonging to said company.

Many other requests for special instructions were made. There were also exceptions to the ruling of the Court upon questions of evidence. To set these out in full is not necessary.

The Judge, after an elaborate charge, concluded by saying : "Upon the whole, so far as the legal positions assumed by the defendant's counsel are concerned, the Court is of opinion, and so instructs the jury, that they are insufficient to shelter the defendant from legal liability under act of 16th February, 1871."

The jury returned a verdict of guilty ; Rule for new trial ; Rule discharged. There was a motion for *venire de novo*, which was also refused ; Motion in arrest of judgment was overruled ; Judgment and appeal by defendant.

*Attorney General, McRae* and *Battle & Son,* for the State. *B. & T. C. Fuller,* for the defendant.

PEARSON, C. J. It is not enough that a man is guilty ; his guilt must be proved according to the law of the land, before he can be punished. This principle is set out in "the Declaration of Rights," as a sacred guaranty necessary for the protection of life and liberty.

The prisoner is indicted under the act of 16th February, 1871. The gravamen of the charge is, that as President of the road he received a million and a quarter of the bonds of the State, and on demand by his successor in office, failed to

account for and transfer the said bonds. The prisoner has no doubt been guilty of a breach of his official duty; say, he squandered away these bonds—committed a devastavit, as the old books term it; say, if you choose, that he carried the bonds to the city of New York, and recklessly lost them at gaming tables—for which he deserves and has received the reprobation of all honest men; still, if the bonds are not embraced by the provisions and meaning of the statute under which he is indicted, his guilt has not been proved according to the law of the land.

We are of opinion, that the act of 16th February, 1871, does not embrace these bonds. The general words of the act are broad enough to include these bonds, and if the act stood by itself, such would be its construction; but there are two other acts that must be taken in connection with the act under consideration, and the matter is made clear by the forcible point of view in which it was presented by Mr. Fuller, on the argument.

Suppose the three acts to be set out in one statute. Section 1. It shall be the duty of the several Presidents of railroads, who have received bonds of the State, to file before the Governor a statement on oath, showing the amount of the bonds received, what amount of the bonds have been sold or hypothecated, and what amount of the bonds remain on hand. And it shall be the duty of such President to return to the *Public Treasurer*, subject to the order of the Governor, all of the bonds remaining on hand, and in case of neglect or refusal, such President shall be guilty of a felony, and on conviction, he shall be imprisoned in the State Prison for not less than five years. Prosecutions under this act shall be in the Superior Court of Wake County. (Act 5th February, 1870.) Section 2. All acts passed at the last session of the Legislature, making appropriations to railroad companies, are hereby repealed, and all bonds of the State issued under said acts, now in the hands of any President, shall be immediately returned to the Treasurer, (Act 8th March, 1870.) Section 3. The Presidents of the

several railroads in this State are hereby required, upon demand, to account with the Presidents elected or appointed to succeed them, and shall transfer to such successors forthwith, " all the money, books, papers, choses in action, property and effects of every kind and description, belonging to such company, and a refusal to account for and transfer all the money, books, &c., as herein required, shall be deemed a misdemeanor, and such President, upon conviction in any Superior Court of the State, shall be punished by imprisonment in the Penitentiary of the State, for not less than one, nor more than five years, and by fine, at the discretion of the Court. (Act 16th February, 1871.)

By the first two sections, the acts under which the special tax bonds (as they are termed) were issued, are repealed. The bonds are declared to be worthless, and a requisition is made upon the presidents of the railroads having any of them on hand, immediately to return them to the Public Treasurer, on pain of imprisonment for not less than five years in the Penitentiary.

By the third section, if it be construed to embrace " special tax bonds," the bonds are treated as things of value, belonging to the railroad company, and the outgoing presidents are required to account for and to transfer these bonds to their successors, on pain of imprisonment in the Penitentiary not exceeding five years.

This construction makes the three acts inconsistent, and results in absurdity. How can a president of a railroad transfer to his successor in office the very same bonds which he is required to return to the Public Treasurer?

This absurdity is avoided by the construction that the acts of February, 1870, and March, 1870, dispose of the special tax bonds, and the act of Feb., 1871, has reference only to money, choses in action, property and effects belonging to the company, and remaining in the hands of a president, who has gone out of office, and refuses on demand to account for and transfer

the same to his successors. This must be so, unless we impute to the General Assembly an intention, " covertly," to repeal the acts 5th February, 1870, and 8th March, 1870, and by the use of general words in the act 16th February, 1871, to give to the special tax bonds a direction, as things of value belong ing to the railroad company, different from the disposition which had been made of them by the two preceding acts, in which these bonds are specified *nominatim* and expressly. Had the intention been to repeal the two preceding acts, and to make a different provision in regard to the special tax bonds, it was easy to have said so, in direct words, and we are not at lib ty to assume that it was the intention to effect the purpose by indirection. *State v Krebs* 64, N. C. 604, is in point. " *Gen eral* words in a statute do not authorize an act to be done, which is expressly prohibited by a former statute; plain and positive words must be used." In that case, the defendant justified under a statute, allowing the corporation to sell land, &c., " in any manner or mode that the corporation shall deem best." It was held, these general words do not authorise sales by means of lotteries, that mode of selling being expressly pro hibited by a former statute. *McAden* v. *Jenkins*, Appendix, 64 N. C. 800, is also directly in point. The Treasurer of the State was directed to deliver to the Wilmington and Rutherford Railroad Company $500,000 of the bonds of the company, upon the surrender to him of " $500,000 of State bonds." Here the words were general; but it is held that special tax bonds are not embraced by the provision and meaning of the act, as such bonds had been by previous legislation declared to be worthless and of no value. We rely upon these two cases, and " have nothing further to say than what has been already said." This disposes of the case, and entitles the prisoner to a *venire de novo.*

The bill of indictment, after charging the prisoner with a misdemeanor, in respect to the " one million two hundred and sixty-four thousand nine hundred and eighty-three dollars and eighty-two cents, of special tax bonds " adds " and also certain

money which had been at divers times received by the said Andrew Jackson Jones, while president of said company, for the use and benefit of said company."

It is evident, from the statement of the case sent up to this Court, that this little charge about the *money*, which the prisoner had received, was on the trial in the Court below run over and passed by, like a rabbit in a fox chase; neither the counsel nor the Judge, or the jury, seemed to have had this little money item of $55,000 in view. The whole field, men, horses and dogs were in hot pursuit and open cry of the $1,264,983.82, of bonds, the gravamen of the prosecution; so, in point of fact, as to the item of $55,000 in money the prisoner has never been tried. If allowed to look at the evidence which his Honor has sent up for our perusal, we should say, the prisoner was ready and willing to account for the money that had come to his hands; in fact he tendered an account in respect to the money and exhibited his vouchers, showing a balance in his favor of some $3,000. It is evident that the demand in regard to the bonds, which, as we have seen, the company had no right to make, under the act of 1871, was the cause of the refusal by the company to accept and consider the account, which the prisoner tendered to the new president and directors, in respect to the money, and his vouchers for its expenditure. In this point of view his Honor ought to have left it to the jury to say, whether the prisoner was not ready and willing to account for the money received by him, apart from the special tax bonds; and whether the account and transfer in regard to the money, choses in action, property and effects of the company, would not have been effected, but for the claim on the part of the company in respect to the special tax bonds.

There is error.

PER CURIAM.                           *Venire de novo.*